UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| NORTH ATLANTIC SECURITIES, LLC, et al., | ) ) ) | |
|---|---|---|
| Plaintiffs, | ) ) ) | |
| v. | ) ) | 1:11-cv-00235-JAW |
| JUDITH M. SHAW, individually and in her capacity as Securities Administrator of the Maine Office Of Securities, | ) ) ) ) ) ) ) | |
| Defendant. | ) | |

**ORDER ON PLAINTIFFS' APPLICATION FOR
TEMPORARY RESTRAINING ORDER**

Based on principles of *Younger* abstention, the Court denies the Plaintiffs' motion for a temporary restraining order to enjoin the state of Maine Office of Securities from proceeding with an imminent disciplinary hearing.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

North Atlantic Securities, LLC, Michael J. Dell'Olio and Associates, LLC, Michael J. Dell'Olio, and Aleksei Kiselev (Plaintiffs) request that the Court grant a temporary restraining order (TRO) staying a disciplinary hearing scheduled for September 26, 2011 before the state of Maine Office of Securities (the Office). The hearing will determine whether Mr. Kiselev's license to trade securities in the state of Maine will be suspended, revoked, or remain in place.

On June 10, 2011, Plaintiffs filed a complaint in this Court against Judith Shaw, individually and in her capacity as Securities Administrator of the Office, *Compl.* (Docket # 1), and moved for (a) a preliminary injunction directing Ms. Shaw to disqualify herself from adjudicating any hearings concerning the Office's investigations of the Plaintiffs; (b) in the alternative, a preliminary injunction staying any Office hearings and publication of notices or findings pertaining to the Plaintiffs until resolution of this action; or (c) a TRO staying any Office hearings or publications involving Plaintiffs until resolution of the motion for preliminary injunction. *Pls.' Mot. for Prelim. Inj.* (Docket # 3) (*Pls.' Mot.*).

On June 15, 2011, at the request of the parties, this Court issued an order, which confirmed Ms. Shaw's agreement not to publish a Notice of Intent pertaining to the Office's investigation of the Plaintiffs on the Office's website pending further court order. *Order on Pls.' Mot. for a TRO* (Docket # 9). The Order also established a timeline for further motions in the event Ms. Shaw did not grant Plaintiffs' motion that she recuse herself as adjudicator of the pending enforcement proceedings. *Id.* Ms. Shaw did not grant the recusal motion, and filed her Answer to Plaintiffs' Complaint on August 2, 2011. *Ans.* (Docket # 13). On the same day, Ms. Shaw filed a combined motion to dismiss and motion for summary judgment, *Def.'s Mot. to Dismiss and for Summ. J.* (Docket # 14), a response to Plaintiffs' Motion for Preliminary Injunction, *Resp. to Mot. for Prelim. Inj.* (Docket # 15), and a statement of material fact in support of her motion for summary judgment, *Def.'s Statement of Undisputed Material Fact* (Docket # 16) (DSMF). On August 12, 2011, Plaintiffs

filed a reply to Defendant's response to their motion, *Mem. in Reply of Pls.' Mot. for Prelim. Inj.* (Docket # 17), an opposition to Defendant's motion to dismiss and for summary judgment, *Mem. in Opp'n to Def.'s Mot. to Dismiss and for Summ. J.* (Docket # 19), and a response to Defendant's statement of undisputed facts, *Pls.' Resp. to Def.'s Statement of Undisputed Fact* (Docket # 20).

While the parties in this case were preparing and filing these motions, the state proceeding was moving forward. On July 12, 2011, Ms. Shaw denied the Plaintiffs' recusal request. *Letter from Atty. Neal L. Weinstein to Chief District Judge John A. Woodcock, Jr.* at 1 (Sept. 21, 2011) (Docket # 22) (*Weinstein Letter*). On August 9, 2011, the Plaintiffs filed a petition for review of agency action with the state of Maine Superior Court, seeking interlocutory review of the July 12, 2011 denial. *Id.* On September 2, 2011, the Plaintiffs asked the Superior Court to stay the September 26, 2011 hearing. *Id.* at 2. By decision dated September 16, 2011, the Superior Court denied the motion for stay. *Id.*; *Def.'s Notice of Relevant Precedent*, Attach. 1 *North Atl. Sec., LLC v. Shaw*, No. AP-11-30 (Superior Ct. Me. Sept. 16, 2011) *Order on Pls.' Mot. for TRO* (Docket # 24). The Plaintiffs appealed the denial of the motion to stay to the Maine Supreme Judicial Court. *Weinstein Letter* at 2. By letter dated September 21, 2011, Plaintiffs renewed their Motion for a TRO in this Court, asking for an order staying the Office's hearing.[1] *Id.* at 1. On September 23, 2011, the Plaintiffs informed this Court that the Maine Supreme

---

[1] The Plaintiffs' motion for preliminary injunction contained a demand for a TRO; however, the Plaintiffs withdrew that request and resolved to proceed only with the request for a preliminary injunction. Mr. Weinstein's letter reinstated the earlier request for a TRO. Still pending are *Plaintiffs' Motion for Preliminary Injunction* (Docket # 3) and *Defendant's Motion to Dismiss and for Summary Judgment* (Docket # 14). The Court addresses only the motion for TRO.

3

Judicial Court had denied their motion for TRO but had retained the case on appeal to address their claim for interim relief. *Pls.' Supplemental Mem. of Law* at 1 (Docket # 25).

## II. DISCUSSION

### A. *Younger* Abstention

In the face of Orders from the Maine Superior and Supreme Court denying the Plaintiffs' motion for the same relief they are seeking here, the Plaintiffs' motion for TRO starkly brings into play issues of state-federal comity and federal abstention. *See, e.g., Younger v. Harris*, 401 U.S. 37 (1971). In *Esso Standard Oil*, the First Circuit summarized the *Younger* abstention doctrine: "[i]n the absence of extraordinary circumstances, interests of comity and the respect for state processes demand that federal courts should abstain from interfering with ongoing state judicial proceedings." *Esso Std. Oil Co. v. Lopez-Freytes*, 522 F.3d 136, 143 (1st Cir. 2008). The *Younger* abstention doctrine has been extended beyond state court proceedings "to other proceedings that implicate important state interests, including state-level, quasi-judicial, administrative proceedings." *Id.*; *see also Maymo-Melendez v. Alvarez-Ramirez*, 364 F.3d 27, 31 (1st Cir. 2004); *Bettencourt v. Bd. of Registration in Med.*, 904 F.2d 772, 777 (1st Cir. 1990).

In the absence of extraordinary circumstances, abstention is mandatory when the following three-part test is satisfied: (1) there exists an ongoing state judicial proceeding; (2) that proceeding implicates an important state interest; and (3) the state proceeding provides an "adequate opportunity for the federal plaintiff to

4

advance his federal constitutional challenge." *Rossi v. Gemma*, 489 F.3d 26, 34-35 (1st Cir. 2007); *see also Mallinckrodt LLC v. Littell*, 616 F. Supp. 2d 128, 135 (D. Me. 2009). "Extraordinary circumstances include those situations in which core constitutional values are threatened during an ongoing state proceeding and there is a showing of irreparable harm that is both great and immediate." *Esso*, 522 F.3d at 143 (internal punctuation and citation omitted).

In their request for a TRO, the Plaintiffs assert that exceptional circumstances exist because Ms. Shaw has exhibited extreme bias against them. Extreme bias may constitute exceptional circumstances but only if the bias "completely renders a state adjudicator incompetent and inflicts irreparable harm upon the petitioner." *Id.* (citing *Gibson v. Berryhill*, 411 U.S. 564, 577 (1973); *Kugler v. Helfant*, 421 U.S. 117, 125 n.4 (1975)).

### B. Ongoing State Proceeding

This first element is met by a pending proceeding that is "judicial in nature," meaning "a judicial inquiry that investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist." *Bettencourt*, 904 F.2d at 778 (citing *New Orleans Public Service, Inc. v. Council of New Orleans*, 109 S. Ct. 2506, 2519 (1989) (*NOPSI*)). Under this definition, the pending disciplinary hearing before the Office has been judicial in nature since it seeks to uphold and enforce Maine's laws and regulations governing persons holding a license to trade securities in this state. Moreover, the Plaintiffs' pending action in state Superior and now Supreme Court meets this element. *Maymo-*

*Melendez*, 364 F.3d at 34 ("[T]he [state] proceeding is ongoing for *Younger* purposes until the state appellate process [is] complete").

Furthermore, the Plaintiffs have made and are continuing to make the very same arguments and the very same demand for relief to the state Superior and Supreme Courts that they are making to this Court, and both have rejected it. The need for federal-state comity is at its height where the parties are requesting the federal court to interfere with a pending state judicial proceeding and to overrule state court orders. Here, presented with the same issues, the Maine Supreme Judicial Court and the Maine Superior Court declined to issue a TRO. A federal trial court does not sit as an appellate court for disgruntled state litigants. *Miller v. Nichols*, 586 F.3d 53, 59 (1st Cir. 2009) ("*Rooker-Feldman* bars jurisdiction whenever parties who lost in state court . . . seek[] review and rejection of that judgment in federal court") (internal punctuation and citation omitted).[2] The first element of *Younger* abstention is satisfied.

### C. Important State Interest Implicated

As to the second element, implicated state interests are defined broadly to include "the importance of the generic proceedings to the State." *NOPSI*, 491 U.S. at 265. Federal courts have long recognized the important state interest involved in "maintaining and assuring the professional conduct" of lawyers, doctors, and other professionals through enforcement of proper standards through state licensing schemes. *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S.

---

[2] The *Rooker-Feldman* doctrine refers to *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

423, 434 (1982) (recognizing state's interest in exercising extensive control of licensing of attorneys to ensure professional conduct); *see also Bettencourt*, 904 F.2d at 778 (doctors); *Maymo-Melendez*, 364 F.3d at 31-32 (horse trainers). Enforcement of licensing laws and regulations governing individuals and companies licensed to conduct securities trading in the state of Maine implicates an important state interest.

### D. Adequate Opportunity to Advance Federal Constitutional Challenges

The Supreme Court and the First Circuit have explicitly held that the third element of *Younger* abstention—adequate opportunity to advance federal constitutional challenges through state proceedings—is satisfied where a party may seek state judicial review of administrative decisions. *See, e.g., Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619, 629 (1986) ("[I]t is sufficient under *Middlesex* that constitutional claims may be raised in state-court judicial review of the administrative proceeding"); *Bettencourt*, 904 F.2d at 778 ("[T]he review proceedings before the [state court] provide an adequate opportunity to raise federal constitutional challenges"); *Maymo-Melendez*, 364 F.3d at 35-36.

Here, the Plaintiffs are in the process of proceeding in state court to vindicate these rights. Unsuccessful with their claim for emergency relief at both the trial and appellate level, they are proceeding with an appeal to the Maine Supreme Judicial Court. Failing that appeal, pursuant to the Maine Administrative Procedures Act, the Plaintiffs may appeal any adverse decision reached by the Office to the Maine Superior Court. *See* 5 M.R.S. § 11001 ("[A]ny person who is

7

aggrieved by final agency action shall be entitled to judicial review thereof in the Superior Court in the manner provided by this subchapter"). The state review process, which the Plaintiffs have engaged, constitutes a sufficient opportunity for the Plaintiffs to advance their federal constitutional challenges to the Office's actions. This element is also met.

### E. Extraordinary Circumstances

Once all three *Younger* elements have been met, abstention by the federal courts is mandatory, *Rio Grande Comm. Health Ctr., Inc. v. Rullan*, 397 F.3d 56, 68, 71 (1st Cir. 2005), unless "extraordinary circumstances" are present, *NOPSI*, 491 U.S. at 364 (citing *Younger*, 401 U.S. 37). "Extraordinary circumstances include those situations in which 'core constitutional values are threatened during an ongoing state proceeding and there is a showing of irreparable harm that is both great and immediate.'" *Esso*, 522 F.3d at 143 (quoting *Maymo-Melendez*, 364 F.3d at 37). Such extraordinary circumstances allowing an exception to the abstention doctrine include, for example, "extreme bias completely render[ing] a state adjudicator incompetent and inflict[ing] irreparable harm upon the petitioner," *Id.* (citing *Gibson*, 411 U.S. 564), and state proceedings brought in bad faith or to harass the petitioner, *Maymo-Melendez*, 364 F.3d at 37.

Plaintiffs claim that Mr. Dell'Olio's politically-connected brother-in-law, with whom Mr. Dell'Olio has had a falling out, "trumped up" charges of fraudulent and prohibited loans from family members and urged the Office to initiate its investigations of Mr. Dell'Olio and the other Plaintiffs. *Pls.' Mot.* at 2, 9. Plaintiffs

8

contend that Ms. Shaw and the Office have violated, and continue to violate, constitutional due process norms by combining investigative, prosecutorial and adjudicatory roles in the hearings that Plaintiffs have requested to contest the Office's charges against them. *Id*. at 3-4.

In response, Ms. Shaw has issued an order in which she makes an assurance that she holds no bias against the Plaintiffs. DSMF Attach. 1 *Aff. of Judith M. Shaw* Ex. D *Order on Mot. to Disqualify, State of Me. Dep't of Prof. And Fin. Regulation, Office of Sec., In re: Aleksie Kiselev* Docket # 11-7214 (July 12, 2011) ("I have no bias or prejudice that affects my ability to provide the Respondent with a fair and impartial hearing and decision"). Also, she has filed an affidavit in which she describes her largely clerical role in the handling of the administrative notices. DSMF Attach. 1 *Aff. of Judith M. Shaw* ¶¶ 1-29. In the affidavit, she stated that once it becomes apparent that a matter may become "contested or contentious" and could be the subject of a hearing, she ceases any involvement; in this matter, she "stopped being directly involved in the investigation" sometime during August 2009. *Id*. ¶¶ 4, 9.

"Without a showing to the contrary, state administrators are assumed to be [women] of conscience and intellectual discipline." *Withrow v. Larkin*, 421 U.S. 35, 55 (1975) (internal quotations omitted). Thus, Ms. Shaw is presumed to properly conduct her job absent a showing to the contrary by Plaintiffs. Here, other than Plaintiffs' allegations, the record falls markedly short of overcoming this

9

presumption and demonstrating the "extreme bias" required to override the Court's duty to abstain under *Younger*.

Although the Plaintiffs rely on *Esso*, this case is markedly dissimilar. In *Esso*, the First Circuit addressed a $76 million fine that the commonwealth of Puerto Rico's Environmental Quality Board (EQB) was considering imposing against Esso. *Esso*, 522 F.3d at 140. The First Circuit concluded that there was a "structural bias" because the EQB "stands to benefit financially from the proceeding because any fine imposed will flow directly to the EQB's budget." *Id.* at 146 (quoting *Esso Std. Oil Co. (P.R.) v. Mujica Cotto*, 389 F.3d 212, 219 (1st Cir. 2004)). There was an additional structural bias because of the nature of the contractual relationship between the EQB and the Hearing Examiners. *Id.* at 147. Furthermore, the Puerto Rican Senate "improperly exerted pressure on the EQB with respect to the assessment of this penalty against Esso." *Id.* at 148. Finally, the First Circuit reviewed the transcript of the hearing itself and found "undisputed evidence of actual bias in these proceedings." *Id.*

Once the state has demonstrated that formal enforcement proceedings have begun, the burden shifts to the Plaintiffs to show that this case presents "extraordinary circumstances" that require the Court not to abstain. *Michalowski v. Head*, No. CV-10-278-B-W, 2010 U.S. Dist. LEXIS 68979, *16 (D. Me. Jul. 12, 2010); *Christian Action Network v. State of Me.*, 679 F. Supp. 2d 140, 148 (D. Me. 2010). The record in this case falls markedly short of the types of structural and actual bias the First Circuit found in *Esso*.

The Court concludes that the *Younger* elements are satisfied and that no "extraordinary circumstance" exception applies. The Court abstains from granting Plaintiffs' motion to stay the Office's upcoming hearing of Mr. Kiselev.

## III. CONCLUSION

The Court DENIES Plaintiffs' Application for Temporary Restraining Order (Docket # 4).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT COURT

Dated this 25th day of September, 2011